Mr. Fleming and Mr. Leavitt Good morning. You may proceed. Okay. Okay, your honor I am the attorney representative of Mr locker in his claim for title to disability insurance benefits. The judge in this case determined that he had severe impairments consisting of compression fractures of his spine. And, and that he was unable to perform work, other than work at a reduced sedentary exertional level. And from age 4024 to age 42 he performed very heavy work as described by the vocational expert in the case, installing doors and windows. He stopped doing that job because of his back condition had surgery for thoracic fractures back in 2010 was unable to work from 2008 to 2013. In 2013 he found a temporary service job, involving the recycling of laptop computer components and which job that he performed for approximately six months. During that time, his back condition worsened. And after, after completing that six month job. He underwent surgery at the L1 L2 levels for compression fractures. The administrative law judge determined that he retained the capacity of performing the temporary placement job that he had done for approximately six months. As of July, 4th of 2015 when he turned 50 years of age he would have been deemed disabled by application of the social security grids the medical vocational rules, specifically tool 112. So Mr. Fleming, can I ask you a question about that? He had been performing the administrative law judge says this laptop recycling, you know, disassembly, whatever you want to call it, job at the sedentary level. He was not performing it at the somewhat higher exertional level that shows up in, say, the DOT. And I take it that he turns 50 while he's doing this job. Is that right? Or immediately thereafter? Anyway, what I'm wondering is how the rule about sedentary work intersects. If your previous work had been sedentary. Well, if if the previous relevant work at a substantial gainful activity level was sedentary and that and the determination is made that that the claimant retain the ability to perform. That previous work. So that's a step four rule. I mean, the ALJ treats this as a step four ruling. He was able to do that laptop work at the sedentary levels. The ALJ never gets to step five. I'm just trying to see how these two rules intersect, because if he had been doing anything else or not working, then the fact that he can only work at the sedentary level after he's 50 years old has consequences. Right? Very much so, Your Honor. Yes. He'd be deemed disabled. Right. So why isn't he deemed disabled if his previous work was sedentary? We know that he's above the age of 50 and all he can do is sedentary. I take it there's sort of a little inconsistency in the rules here. Well, the rules provide that if he is able to perform past relevant work, even if he is at sedentary level, he is he is not disabled. Then he's not disabled because it just shuts off at step four. You see what I'm getting at. I would like the Commissioner's view on this as well. Because if there's a reason for the system to say after you're 50 years old and all you can manage is sedentary and then you're deemed disabled or eligible, it's interesting that being only able to perform sedentary work before in your previous job doesn't have that same effect. He doesn't have the laptop job anymore. Right? That's correct, Your Honor. Yes. Yes, that is. It is a little bit. Not confusing, but that is that is my understanding of the law is that if he's able to perform any of his past relevant work. No matter what the exertional level. Correct. Okay. So, so we maintain that errors were committed. By the judge in 2 material respects. 1 for failing to explain why the applicants. Alleged limitations were rejected. He testified that. Also, he did undergo some surgery just after completing that sedentary job and other medical and chiropractic treatment. So there was a worse. We maintain there was a clear worsening of his condition. And so he, he maintained that he was unable to sit for longer than 30 minutes. Without standing and walking around for he testified to 15 minutes before he could resume sitting. The administrative law judge asked the vocational expert, whether the requirement of being able to. Interrupt sitting after a half hour and walk around for 5 minutes would eliminate the past relevant work. And the vocational expert testified that it would eliminate the past relevant work. Plus, it would be job preclusive. There would be no other work that could be performed with that sedentary functional capacity and that requirement. And secondly. We maintain that the judge failed to give. To provide a substantial evidence basis for not adopting the treating source opinions of Dr. Paul Ruby. Mr. Locker's primary care physician who he had been treating with since the year 2000. Dr. Ruby. Supported his gave opinions as to residual functional capacity. Opinions, including that Mr. Locker would be off task more than 25% of the workday that he would be absent more than 4 days per month that he could only sit for a total of 4 hours and an 8 hour workday. And he required a sit stand option. All of those opinions on the part of Dr. Ruby were. Would have precluded his performing that. Work as a as was found to be a past relevant work by the judge in the doing that computer recycling. Job. The administrative law judge gave 4. Recited 4 areas of the evidence. That was supported her position. She claimed for only giving some weight to Dr. Ruby's opinions. And looking at those. Area areas of evidence. We find that there we maintain that they're very, very. Limited in terms of. Their reflection of Mr. Locker's functional capacity. And we maintain that they really. Judge exercised some cherry picking in going over the records to find some areas where reports of ability to walk. Normally, and that type of thing. Supported her, her, her claim that Dr. Ruby was not. And his opinions were not worthy of. Of. Controlling controlling weight. So, the. We maintain that errors were committed in the determination of the credibility of Mr. Locker's claims as to his limitations and symptoms. And errors were committed. For not providing a substantial evidence basis for not adopting Dr. Ruby's opinions. Thank you very much. All right. Thank you very much. Mr. Good morning. David, let it here on behalf of the commissioner. May it please the courts. I guess I'd like to start with. I'd like to start with. Posing counsel's points about the past relevant work of. Laptop recycler. Just want to point out the LJ reasonably found that Mr. Lacquer could perform his past relevant work. As a recycler of laptops, as he actually performed that work. As long as he can perform that work as he actually performed it. He's not disabled. So, Mr. Can you please address what strikes me as an anomaly in the regulations? Because. What this means is that anybody who's performing sedentary work. When they reach the age of 50 is not entitled to the benefit of. The presumption that people who are not working at all, but who can only get up to the sedentary level. And that, that strikes me as intellectually inconsistent. Okay. The idea that you can be precluded. Then you're automatically disabled. If the only work you can transfer to a sedentary work. With a number, there are a number of presumptions about lack of transferable skills and the level of work you can perform. But if you can only do sedentary work, and you cannot perform your past job, there's a presumption of disability. However, that's only if you cannot. Right. But see what I'm saying. If the past job is sedentary, then lots of people who are limited to sedentary work. Don't get the presumption. Right. That's correct. Because the presumption is only there to assist. Or to help individuals who can cannot do their past job. They have to try to find another type of job. And it's more difficult when you're above 50. However, in this case, Mr. Lacker did perform a past job that was sedentary work. And he can return to it. And therefore, that consideration in the regulations is not there. Did we have a vocational expert finding about how many jobs of this laptop recycling type at the sedentary level there were in the relevant economy? There was not. Because that is not a concern. What if there was just one? It seems to me, again, the general rule requires the vocational expert to identify positions for which there's a meaningful number. And they all specify other 10,000 jobs of, you know, I don't know what, Packer in the economy, et cetera. Yes, Your Honor. It proceeds to step five. But in this case, it just stopped at step four. Right. It stopped at step four. But we don't care at step four whether his previous work is still a job in the national economy. Well, we don't care about any numbers of jobs. That's a concern for step five. Right. So even though his previous work doesn't exist anymore, there are no jobs anymore in the national economy for making typewriters because nobody wants a typewriter anymore. Well, the vocational expert didn't say that there were no such jobs. And it's really the claimant's burden at step four to show that the job doesn't exist because the claimant bears a burden at step four. And in any event, this argument was waived because Mr. Lacker did not raise it in the district court. So and as I mentioned, the burden of proof is with Mr. Lacker. He hasn't shown that he's unable to perform this job. So in this case, the LJ should be affirmed on this step four issue. But turning to, I think, the medical evidence, which I think is more of the salient point here. The question before the court is not whether Mr. Lacker was significantly limited. The LJ acknowledged, the LJ agreed that Mr. Lacker had significant limitations. The question is whether the LJ had a reasonable basis to find that Mr. Lacker still retained the ability to perform a restricted range of sedentary work. And as long as he could perform that restricted range of sedentary work, which of course is the least exertional type of work described in the regulations, he could perform his laptop recycling job. And if he could perform his laptop recycling job, as discussed earlier, he would not be disabled. And in reaching her conclusion that Mr. Lacker retained that limited ability to work, the LJ looked at a number of factors. The LJ looked to Mr. Lacker's improvement with treatment. The LJ looked to the objective evidence. And the LJ looked to the medical opinions. So Mr. Lacker, over the course of his treatment, improved to the point where he was able to shovel snow. He experienced improvement with chiropractic care to the point where he achieved his goals of reducing his pain. And Mr. Lacker also was able to reduce his pain medication to the point where he was only using ibuprofen. Actually, if I could just go back to the point about shoveling snow, that is significant here because Mr. Lacker is maintaining that he's unable to perform even a restricted range of sedentary work and to return to a job where the heaviest weight he lifted was a laptop. So that is a significant point that the LJ noted. And looking at two of the objective medical evidence, the LJ acknowledged that Mr. Lacker had tenderness in his back. But the LJ also noted that Mr. Lacker had normal gaits. Mr. Lacker had normal range of motion of his arms. He had no sensation deficits. His reflexes were normal. And he had no focal deficits with his nerves. So taking that information together and taking that evidence together, the LJ reasonably found that while significantly limited to a restricted range of sedentary work, Mr. Lacker was not disabled. And finally, turning to the medical opinions, the LJ, to Mr. Lacker's benefit, was more restricted in the opinions of Doctors Foster and Champ. And significantly with Dr. Foster, Dr. Foster gave his opinion on September 28, 2015. And that was only two days before the expiration of the period considered by the ALJ. So Dr. Foster looked at all the evidence and still came to a conclusion that Mr. Lacker was not as limited as found by the ALJ. So the ALJ was more differential than those opinions who had reviewed the evidence. However, the ALJ only gave some weight, reasonably, only gave some weight to Dr. Roby's opinion because some of his limitations were extreme. The ALJ gave either the same or greater limitations in the areas of lifting, sitting, I'm sorry, lifting, standing, and walking as did Dr. Roby. However, some of the other restrictions that Dr. Roby gave, such as needing a cane, having reaching limitations, being off task 25% of the day, needing to miss four days of work per month, were not supported by the record. As I noted, the ALJ acknowledged that Mr. Lacker had back tenderness, but given the other findings such as normal sensation, normal weight, normal range of motion of the arms, and normal reflexes, the ALJ reasonably did not find Dr. Roby's, some of Dr. Roby's more extreme restrictions to be persuasive. And the ALJ also noted that Dr. Roby did not explain the basis of his restrictions other than listing Mr. Lacker's diagnoses. So the ALJ reasonably considered the evidence in restricting Mr. Lacker to a limited range of sedentary work. Even if the court might have found differently, had it been the fat finder, still, because the ALJ gave a reasonable basis. We just lost this. Okay, I think we're back, but Mr. Levitt, you're on mute. Oh, thank you, Your Honor. I'm not, it seems like the video cut out for a minute, but I'll just go back a sentence or two from what I was saying. So the ALJ reasonably looked at the evidence and found that Mr. Lacker could perform a restricted range of sedentary work. Even if the court were to look at the evidence differently, had it been the fact finder, still, because the ALJ gave a reasonable reading of the evidence, her decision should not be disturbed and the commissioner's decision should be affirmed. The court has any questions? Apparently not. Thank you. Mr. Levitt and Mr. Fleming, your time has expired, so we'll take the case under advisement.